## No. 9383.

### JOHN I. ADAMS & CO. VS. TEMPLE S. COONS ET AL.

| 37 | 305 |
| 45 | 1079 |
| 37 | 305 |
| 48 | 318 |
| 48 | 1193 |

The State court has jurisdiction of a hypothecary action to enforce a judicial mortgage resulting from the inscription of the judgment of a Federal Court.

The inscription of the judgment of the Federal Court sitting in this State, creates, equally with that of a judgment of a court of the State, a judicial mortgage.

The effect of a judgment declaring the simulation of transfers and unmasking the title of the real owner, is not confined to the plaintiff in the suit, but places the property as if the simulated title had never existed and subject to the rights of all creditors according to the rank which the law accords them.

The pledgee of collaterals, who proceeds for a judicial foreclosure of his pledge, is not debarred from purchasing at the judicial sale thereof.

Objection to the capacity of plaintiffs to stand in judgment not raised by the pleadings will not be noticed.

The credit claimed for the $2500 paid by Friedlander, is allowed for reasons given in Adams & Co. vs. Friedlander.

APPEAL from the Eighth District Court Parish of Madison. *Deloney, J.*

*Wade R. Young* for Plaintiffs and Appellants.

*A. L. Slack* and *H. P. Wells, contra.*

The opinion of the Court was delivered by

FENNER, J. Temple S. Coons, a sole trader under the name of Temple S. Coons & Co., being indebted to plaintiffs for goods sold, furnished his notes therefor *payable to their order, and secured the same by the pledge of certain collaterals.*

Subsequently the notes of Coons, with the endorsement of John I. Adams & Co., passed to the Importers & Traders' National Bank of New York, and by a written act signed by Coons as well as the other parties, the collaterals were passed to said bank in pledge to secure the payment of the principal notes, and with express authority in said bank, in case of their non-payment at maturity, to sell the collaterals at public or private sale, to apply the proceeds to the payment of the

notes, and to account for any surplus thereof to Adams & Co., the original pledgees, whose liability to the bank as endorsers on the notes was recognized and continued.

The principal notes remaining unpaid, after several extensions granted with the written consent of Coons, the bank, instead of availing itself of the privilege of non-judicial sale, elected to proceed for a regular judicial foreclosure; and to that end instituted a proceeding in equity in the Circuit Court of the United States sitting in New Orleans against Coons, wherein it prayed for judgment against him for the amount of the notes, for a recognition of its privilege as pledgee on the collaterals duly described, and for a decree directing said collaterals to be sold and proceeds applied to the payment of their said debt.

Subpœna issued and was duly served upon Coons *personally.*

He entered no appearance in the case, and after proceedings entirely regular, a final decree *pro confesso* was entered, adjudging that the bank " do recover from Temple S. Coons the sum of $5,507.58, with interest, etc.; " " that the pledge of collaterals set forth in said bill and exhibits be recognized, made executory and foreclosed; that the following notes embraced in said pledge be sold thereunder (describing them); that sale be made by public outcry on the steps of the Custom-house by F. A. Woolfley, who is hereby appointed special master and commissioner for that purpose, after ten days' advertisement in the New Orleans Picayune, and for cash to the highest bidder."

This decree, in all its parts, including the right to sale and the mode of sale therein directed, is *res judicata* as to Coons, and precludes all question thereof by him.

The sale was made by the special master in strict conformity to the decree and the collaterals were adjudicated to the plaintiff bank as the last and highest bidder.

The master's report of the sale was duly filed and entry thereof was made in the chancery order book, notifying all parties in interest thereof; and it does not appear that any opposition thereto was ever made.

Thereafter the bank brought suit against John I. Adams & Co. as endorsers for the balance remaining due on the notes after crediting the proceeds of the collaterals. Adams & Co. having in the meantime effected a composition in bankruptcy with their creditors at fifty cents on the dollar, the bank recovered final judgment against them for that proportion, being the sum of $2584.48 with interest, etc., which

was subsequently paid. In 1883 the old firm of Jno. I. Adams & Co., composed at first of J. I. Adams, Renaud and E. C. Adams, and later of J. I. Adams and Renaud alone, ceased to exist, and a new firm was formed, composed of these two and of J. G. Ong and F. A. Bonito, which firm is the party plaintiff herein. The evidence of Renaud shows that this firm has no connection with the former ones, does not own their assets and is not liable for their debts.

To this firm, upon considerations stated and satisfactory to the Importers and Traders' Bank, the latter transferred the judgment held by it against Temple S. Coons, with full subrogation. This transfer was made on March 21, 1884, and the evidence shows that the plaintiff firm not only owns that judgment, but also owns the claim of the old firm of Adams & Co. against Coons for the restitution of the amount paid on the judgment against it as endorser of his notes.

The judgment against Coons had been recorded in the parish of Madison, and operated a judicial mortgage upon the immovable estate of Coons there situate.

The "Killickrankie" plantation, which had formerly been the property of Coons, had been passed from him through sundry conveyances to his wife, Mrs. Annie E. Coons, in whose name the apparent title stood. This apparent title was attacked by creditors of Coons as a sham, by an action *en declaration de simulation*, and by a decree of this Court rendered in 1883, the said title was annulled and the said plantation decreed to be the property of Coons. See Friedlander vs. Brooks et als, 35 Ann.

The present is a hypothecary action brought by plaintiffs, as owners of the judgment of the bank vs. Coons, against Coons and his wife, praying for judgment against them recognizing and making executory the judicial mortgage on Killickrankie, resulting from its registry, and for a writ of seizure and sale thereof for the satisfaction of said judgment and costs.

Adams Kellogg, who is the transferree of the judgment of Friedlander vs. Coons, also operating a judicial mortgage on Killickrankie and also of the rights of Friedlander under the judgment annulling the title of Mrs. Coons, and declaring Killickrankie to be still the property of Coons, intervenes in the case and joins the defendants in opposing the demands of plaintiff.

Numerous interesting legal questions are presented which we will successively dispose of.

1. Objection is made to the proceeding in the State Court, on the ground that it is a proceeding to execute a judgment of the Federal

court. We do not find any weight in this. It is an ordinary hypothecary action to have the mortgage resulting from the inscription of the Federal judgment made executory. It is true that plaintiffs might perhaps have issued execution on the judgment; but if they preferred the more cautious course of having all possible objections to their mortgage settled before risking a seizure of the property, we see no right or interest of defendants to forbid them, nor do we see any obstacle to the competency of the forum.

2. It is claimed that the inscription of the judgment of the Federal court does not create a judicial mortgage. We find no force in this position. The Code makes no distinction between judgments rendered and executory in this State, whether by Federal or State courts. The only discrimination is against "judgments rendered in other States of the Union or in foreign countries," which do not operate a mortgage, unless they have first been rendered executory here by judgment of a tribunal of this State. C. C. 3321, 3322, 3326.

The plaintiff's judgment was rendered in this State by a competent tribunal and is executory here, and its inscription undoubtedly gave rise to the judicial mortgage.

3. It is claimed that plaintiffs can take no benefit from the judgment in the case of Friedlander vs. Brooks et al, annulling the pretended title of Mrs. Coons and declaring Killickrankie to be the property of Temple S. Coons, but said judgment only availed Friedlander and entitled him to be paid by preference. If the action had been merely revocatory, such would have been the law; but being purely an action *en declaration de simulation*, it is well settled that the effect of the judgment was to unmask the title in favor of all creditors and all persons interested and to declare that the property had never ceased to be the property of the debtor. Lucas vs. D'Armand, 11 Ann. 168; Dunn vs. Woodward, 11 Ann. 265; 1 Larombière Theory of Obns. p. 776.

The property stands in the hands of the debtor precisely as if such simulated transfer had never made, and subject to all rights attaching thereto. The creditor, at whose instance the simulation has been pronounced, acquires no preference thereby, but has his recourse against the property only in common with other creditors and according to the rank which the law accords them.

4. It is claimed that the judgment of the Importers & Traders' National Bank had been extinguished by the collaterals which the bank held in pledge therefor; that the purchase of said collaterals by the bank at the sale thereof, was a nullity, because the bank was in-

competent to buy; that, after its said purchase, the bank still held said collaterals for the benefit of Coons, and had realized from them an amount sufficient to extinguish the entire claim against him.

Waiving all other questions, we cannot affirm the alleged incompetency of the bank to purchase at the foreclosure sale.

Defendant contends that a pledgee is the trustee of the pledgor and his agent to sell; and he invokes the equitable maxim that such a trustee is disable to purchase for his own benefit at the sale of the trust property.

He refers us to 1st Hare & Wallace's leading cases in equity, p. 125, et seq. where the learned compilers have collected a multitude of cases, illustrating the maxim referred to. After careful reading, we discover none applying it to the capacity to a pledgee to purchase at a sale under judicial foreclosure; nor has counsel referred us to any authority elsewhere supporting such a doctrine.

We think the maxim has no application to this case. The pledgee is, in a certain sense, the agent and trustee of the pledgor, that is, for the care and custody of the thing pledged, and for its proper administration.

Had the bank availed itself of the power granted in the act of pledge to sell the property at private or public sale, there might have been some room for the application of the maxim. But the bank did not do so. It preferred to proceed in the mode authorized by Art. 3165 of the Code, to obtain a judgment in ordinary course of law and to subject the pledged property to sale in execution of the judgment. We consider the proceeding in equity in the U. S. Court the entire equivalent of judgment, seizure of the pledged property under execution thereof and its sale by the executive officer of the court. We cannot conceive of any reason why the pledgee, as judgment creditor in such case, should not have had the same right to purchase as would any other judgment creditor who had seized the same property. To hold otherwise would be to make the pledge a disadvantage rather than a benefit.

Even in cases of trustees proper, to whom the rule would ordinarily apply, it seems to be a matter of course when it appears that the trustee has a personal interest in the sale, which might be sacrificed if he were not permitted to bid, for the Court of Chancery to give him leave to purchase, DeCarters vs. DeChaumont, 3 Paige 178.

The right of the pledgee to purchase at a foreclosure sale seems fully recognized, without such authorization. Quincy vs. White, 63 N. Y. 370; Newport vs. Douglas, 12 Bush 720.

Certainly, under Louisiana Law. when the pledgee proceeds to obtain a personal judgment against the pledgor and to subject the property to sale under execution thereof, he stands *in consimili casu* with any other judgment creditor and may prevent the sacrifice of the property by bidding at the sale.

This sale terminated the interest of Coons in the property sold and he has no concern with the subsequent disposition thereof. He received credit for the price thereof, and this is all to which he was entitled.

The clamor about fraud and malpractice is sustained by no evidence whatever. Indeed, with the exception of the testimony for plaintiff, the record presents nothing but documentary evidence and that discloses only legal proceedings, perfectly regular and valid on their face. If Coons has suffered any loss in the sale of these collaterals at a vile price, the lesion affords him no legal ground of relief, and he has only his own laches and negligence to blame.

5. The objection to the sufficiency of plaintiff's title to the judgment sued on is not presented, as should have been, in the pleadings. Plaintiff stands as transferee of the judgment on the record of the United States Circuit Court, by a transfer executed by the attorneys of record of the original plaintiff; and their authority to act for their client not having been put at issue by any plea, we are not called on to question its sufficiency.

6. The question raised in argument as to failure of the old firm of Adams & Co. or the bank, to account for certain other collaterals not included in the foreclosure sale, can receive no attention, because a careful study of the pleadings shows no reference to any such issue.

7. The credit claimed for the $2500 paid by Friedlander must be allowed; the reasons for which sufficiently appear from the opinion this day delivered in the case of this plaintiff against Friedlander.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the judicial mortgage existing in favor of plaintiffs and resulting from the record of the judgment described in the petition, for the sum of $5507.58 with 8 per cent per annum interest on $3671.72 from December 21, 1878, and on $1835.86 from December 28, 1878, less the sum of $472.00 paid February 16, 1879, and the further sum of $2500 paid February 15, 1883, with like interest on both said payments from respective dates thereof—be recognized and made executory against the Killickrankie plantation, and that a writ of seizure and sale issue to the sheriff of Madison parish, commanding him to seize and sell said plantation to pay and satisfy said debt and costs, appellees to pay costs in both courts.

Rehearing refused.