(38 South. 494.)

No. 15,319.

BRIGHT v. NEW ORLEANS RYS. CO.*

(March 13, 1905.)

ADVERSE POSSESSION—STATE LANDS—TRESPASS —HEDGE—BOUNDARY.

1. Adverse possession cannot be acquired of property actually owned by, and virtually in possession of, the state.

2. The vagaries of hedge vines may be checked by cutting off that part which extends onto property of the state, of which the abutting owner had not acquired possession, for the state had leased within six months of the date of plaintiff's suit.

3. The weight of the testimony, as between the official plan in possession of the board' of control—the state's representative and defendant's lessor—and the plan under which plaintiff claims his eastern line, sustains the former.

4. At best, a spreading hedge, not trimmed every year, is a poor monument of a boundary line.

5. There was no trespass for which plaintiff can recover damages.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred. D. King, Judge.

Action by George L. Bright against the New Orleans Railways Company. Judgment for defendant, and plaintiff appeals. Affirmed.

George L. Bright (Benjamin Rice Forman, of counsel), for appellant. Denègre & Blair, Rouse & Grant, and Victor Leovy, for appellees E. C. Foster and Pearl Wight.

BREAUX, C. J. The hedge and ornamental shade trees, the value of which is claimed by plaintiff, were cut down and destroyed by defendant.

They were planted about 25 years ago.

Plaintiff owns Oakland Park, fronting on the New Canal and Shell Road, a distance of 704 feet and 4 inches. This hedge, he avers, gave value to his property, which value he fixes at $1,500, and asks, in addition, for exemplary and punitive damages in the sum of $1,000.

Plaintiff, by way of amendment to his petition, alleged that:

"He has been in possession quietly and without interruption as owner for more than one year, and since the 17th of May, 1866, and was in possession when the disturbance complained of occurred."

Plaintiff states in his brief that:

"The object of the supplemental petition was to emphasize the fact that the claim rested on possession, and to avoid inquiry as to whether any part of the hedge extended over the property line, and to avoid any issue as to whether or not the hedge extended and spread beyond the property line."

The defendants pleaded the general denial, and, in addition, averred that they

acted on behalf of the New Orleans & Pontchartrain Railroad Company; that they were constructing, under grant from the city of New Orleans, a street railway along the New Basin Canal and Shell Road upon the property of the Shell Road leased to the New Orleans & Pontchartrain Railroad Company; that the land on which they constructed the railway is in front of plaintiff's land, but not part of his land, nor in his possession; that no damage was committed by it; that plaintiff passed the place during the work of construction; that he never raised the least objection.

Plaintiff then filed a second supplemental and amended petition; averred that he sought to improve and hasten the growing of the hedge, but that defendants, without his knowledge, destroyed the roots of the hedge, cut down the sprouts, and prevented a second growth.

He also charged that defendants' company trespassed on his property, and removed his front line four feet back from where it was constructed, and extended a wire fence in place of the hedge, four feet back of his property line. He averred that defendants' acts were prompted by malice. He asked to have his line reinstated as it was prior to its removal, and for an injunction, which the lower court declined to grant.

The defendant joined issue on this supplemental petition, and denied all of plaintiff's averments.

Unquestionably the defendant destroyed that part of the hedge which extended east of Oakland, in the direction of the canal. It remains for us to determine whether the facts are such as to render it liable in damages for thus destroying part of the hedge. The judge of the district court gave written reasons, and rejected plaintiff's demand.

These reasons, in the main, are that one has the legal right to the possession of his property; that plaintiff was in possession of Oakland Park, and had a Cherokee fence on his division line, but that this hedge in time extended beyond the line, and on the property owned by the state; that, through the canal board, representing the state, she (the state) gave the right of way to defendant to construct its railroad along the canal on her property, and that defendant cut the hedge down along the front of plaintiff's property in conformity with the plat of survey offered in evidence (it is the official plat of the state's board of control), and that it (the defendant) remained entirely on the property of the state; that plaintiff suffered no damages; and that the property rented for a larger amount after the hedge was cut down.

The title under which plaintiff now owns Oakland Park designates the area by the numbers 1 to 28, different lots, as per plan of Williams, surveyor, dated June, 1859. This title recognized the Canal and Shell Road property as the eastern boundary, but failed to give complete data upon which to establish the eastern line of the plaintiff.

With reference to the title of the state, it appears that the property was bought by the New Orleans Canal & Banking Company in November, 1831. In March preceding, that year, the subscribers of the New Orleans Canal & Banking Company organized themselves into a company in accordance with an act of the Legislature.

One of the purposes of this company was to construct a canal from a point north of Poydras street to Lake Pontchartrain. The act of incorporation contains provisions under which the property of the company was to become the property of the state after 35 years. Act No. 18, p. 38, of 1831.

In the year 1866 the property of the New Orleans Canal & Banking Company was delivered to the state in compliance with the limit just mentioned, laid down in the charter.

Act No. 78, p. 50, of the Session of 1858, contains declarations showing the nature and

extent of the state's titles. Act No. 144, p. 199, of 1888, provides that the board of control of the New Basin Canal and Shell Road, to which the state intrusted this property, "shall represent the state in all matters pertaining to the New Basin Canal and Shell Road, and her board of control shall lease whatever property belongs to the Canal and Shell Road for their use, but no lease of Shell Road property shall extend beyond the term of office of the officers by whom leased. without the consent of the government."

Thus it will be seen that by special enactment the state has authorized the board of control to lease the property.

There are two plats of survey in the record, and two sketches, one of which plats we have already had occasion to refer to as not establishing the eastern boundary line. The other plat we will have occasion to refer to later in our discussion. Plaintiff testified, in substance, that the hedge in question extended beyond his property line toward the Shell Road.

One of the acts under which defendant claims was signed by the Attorney General and the Governor of the state, and recognized the right under which defendant held. The New Basin and Shell Road has leased the property, and lays no claim to the property, except as defendant's lessor.

The property was unquestionably at one time the property of the Canal & Banking Company, as appears by deeds to which we have already referred. The title of the state is unquestionably legal. She is managing the property through her board of control.

This brings us to the second proposition: Are the defendants holders of the rights of the state?

We will for a moment digress from the immediate subject, only to state that there is a seeming inconsistency between a lease under which defendants hold and the Constitution, which ordains the "New Basin and Shell Road and their appurtenances shall not be leased or alienated."

But on review of the legislation upon the subject, it becomes evident that the state, through her representatives, could lease the strip of land between the Shell Road and plaintiff's property, and that the organic law under legislative interpretation has not been disregarded.

We may say here that leasing the Canal Road neither proved satisfactory nor remunerative to the state; hence we presume the limitation above was adopted, as relates, however, only to the Canal and Shell Road.

No direct attack is made on the acts of lease under which the defendant holds. If the lease is illegal—a question not before us —it is not absolutely so, and is at most only voidable.

The legislative department has chosen to consider the constitutional limitation in question as directed only to the Canal and Shell Road and their appurtenances, and has chosen to segregate from the Canal and Shell Road the strip of land in question, as not being part of the Shell Road, not part of the canal.

The plaintiff, owner of the abutting property, desires to protect his own lands. If defendants have passed the property line of plaintiff, he is entitled to recover damages. This was decided in Bright v. Bell et al. (No. 15,198 of the docket of this court) 37 South. 976, 113 La. 1078.

But we have not found from the testimony that defendant passed that line. We have seen that the strip of land is owned by the state. A claim to possession of land of the state affords scant ground to sustain an action based on alleged adverse possession.

No prescriptive right can be acquired against the sovereign. Lafitte v. City of New Orleans, 52 La. Ann. 2099, 28 South. 327; Sheen et al. v. Stothart et al., 29 La. Ann. 630.

Moreover, plaintiff's possession of the property of the state was at least irregular, and not sufficiently marked as to intention to

enable him to retain possession. The state's right was not prejudiced by the fact plaintiff's hedge spread out and over this strip. The state and those who held from the state could trim it or cut it down to the extent that it went beyond plaintiff's property line, without rendering themselves liable for damages.

Originally there seems to have been some doubt about the line. It remained in that state for some time. It was then, doubtless, that plaintiff conceived the idea that his line was nearer the canal than surveyors have found it since.

Defendants' engineer, Black, in laying out its lines, followed the plan furnished by the canal board, which indicates the line along the whole canal, and which was taken by the canal board and defendant railroad company as correct. We have not found it incorrect. Thus far no error in this plat has been called to our attention. A fence was built on this line; that is, the line indicated by this plat. Defendants, in finding the property rented, followed the plan furnished by the canal board to it (the defendant). It ran a line according to that plan, and in running the line, after putting in its stakes, it did not cut the hedge in the direction of plaintiff's property beyond the line. On the Shell Road side of the hedge it had spread quite a number of feet—in some places as many as fifty. It was this part of the hedge the witness for plaintiff testified they destroyed.

The orders of defendant and appellee to the workmen were not to cut beyond the property line, and we infer that they did not try to cut beyond, at all. The foregoing immediately above, about the laying of this line, is about the words of A. L. Black, engineer of defendant's company.

He also added that no notice was given to Mr. Bright because "the owner in the majority of cases was not known." The witness refers to laying the whole length of line along the canal. "In this case I did not know Mr. Bright was the owner." It was simply building a fence along the whole line of the state board.

If this be correct (we have no reason to state it is not) as relates to the line, it certainly does away with plaintiff's charge of malice.

The defendants were lessees, and followed lines substantially indicated by their lessor.

There was no haste manifest in clearing the way over the strip. The cutting commenced in October, 1902, and continued until March following. During that time the evidence shows that plaintiff went to Oakland Park about three times a week, saw the work, and urged no objection. All the witnesses for defendant—a number—testified that they did not cut any part of the hedge which was inside of plaintiff's property line.

They sustained the averment of defendants in this respect.

For reasons assigned, the judgment appealed from is affirmed.