UNITED STATES v. KENDALL.

(District Court, E. D. Louisiana, New Orleans Division. February 24, 1920.)

Nos. 8305, 8955.

1. JUDGMENT ☞760—FEDERAL COURT JUDGMENTS NOT LIENS INDEPENDENT OF STATUTE.

Federal court judgments are not liens independent of statute, as the mere entry of judgment created no lien at common law.

2. JUDGMENT ☞766—FEDERAL COURT JUDGMENT NOT A LIEN IN PARISH OF ORLEANS.

Under Rev. St. § 967 (Comp. St. § 1608), providing that federal court judgments shall cease to be liens in the same manner as those of state courts, and Civ. Code La. arts. 3321, 3322, 3388, and Code Prac. La. art. 545, making state court judgments liens only after recording in the parish of Orleans, etc., a judgment rendered by a federal court in New Orleans did not, prior to August 1, 1888, become a lien until recorded as required by the state statutes.

3. JUDGMENT ☞770, 868(1)—CREATION OF LIEN OR REVIVAL MAY BE EFFECTED WITHOUT ISSUING EXECUTION.

Under Civ. Code La. § 3547, providing that prescribed judgments may be revived by issuing citations, it is unnecessary that execution issue upon a judgment to create a lien or to keep it alive.

4. EQUITY ☞85—LACHES NOT IMPUTABLE TO GOVERNMENT.

Laches is not imputable to the federal government.

5. LIMITATION OF ACTIONS ☞11(1)—STATUTE DOES NOT RUN AGAINST FEDERAL OR STATE GOVERNMENT.

Statutes of limitation do not run against either the United States or the state of Louisiana.

6. JUDGMENT ☞766—UNRECORDED JUDGMENT OF FEDERAL COURT BECAME LIEN AFTER ACT AUG. 1, 1888.

Judgments entered by a federal court in Louisiana, which were not liens prior to August 1, 1888, because not recorded with the proper state offi-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cers as required by Rev. St. 967 (Comp. St. § 1608), Civ. Code La. arts.
3321, 3322, 3388, and Code Prac. La. art. 545, became liens when recorded
with the clerks of the federal Circuit and District Courts in the manner
prescribed by Act Aug. 1, 1888.

7. CONSTITUTIONAL LAW ⬠48—CONSTRUCTION OF STATUTE AGAINST INVALID-
ITY.

Repeal of a statute will not be construed to affect vested rights.

8. JUDGMENT ⬠753—LIEN NOT AFFECTED BY REPEAL OF STATUTE.

Act Aug. 17, 1912, repealing Act Aug. 1, 1888, § 3, making certain
recorded federal court judgments liens on real estate in Louisiana, did not
affect the lien of judgments that had been previously recorded under the
repealed act.

9. JUDGMENT ⬠766—WHEN FEDERAL COURT JUDGMENTS ARE A LIEN IN LOUISI-
ANA.

Under Rev. St. § 967 (Comp. St. § 1608), Civ. Code La. arts. 3321, 3322,
3388, and Code Prac. La. art. 545, relating to the lien of judgments, federal
court judgments rendered prior to August 1, 1888, or after January 1, 1913,
do not become liens, unless recorded as provided by the Louisiana statutes.

10. JUDGMENT ⬠766—FEDERAL COURT JUDGMENT LIEN WHEN RECORDED IN
CLERK'S OFFICE.

Under Act Aug. 1, 1888, federal court judgments recorded with the
clerk of the Circuit and District Courts at New Orleans between August
1, 1888, and January 1, 1913, became liens on real estate in New Orleans
owned by the judgment debtor during that period.

At Law. Action by the United States against Peter J. Kendall. On
rule by Julius D. Tchopik on the clerk of the District Court to show
cause why judgments in favor of the United States against Kendall
should not be declared inoperative. Rule discharged.

Solomon Wolff, of New Orleans, La., for plaintiff in rule.

J. D. Dresner, Asst. U. S. Atty., of New Orleans, La.

T. M. Logan Bruns, of New Orleans, La., amicus curiæ.

FOSTER, District Judge. This is a rule by Julius D. Tchopik on
the clerk of the District Court, contradictorily with the United States,
through the United States attorney, to show cause why two judg-
ments in favor of the United States against Peter F. Kendall should
not be declared inoperative as liens on certain property at one time
owned by Kendall.

[1, 2] On February 1, 1878, and on May 14, 1881, the United States
obtained judgments against Kendall for $1,430 and $10,304.42, re-
spectively. It is settled that judgments of federal courts at law are
not liens independent of statute, as the mere entry of judgment cre-
ated no lien at common law. At that time the statute of the United
States controlling the lien of a judgment was the Act of July 4,
1840, c. 43, § 4, carried into the Revised Statutes as section 967
(Comp. St. § 1608), reading as follows:

"Judgments and decrees rendered in a Circuit or District Court, within any
state, shall cease to be liens on real estate or chattels real, in the same man-
ner and at like periods as judgments and decrees of the courts of such state
cease, by law, to be liens thereon."

Construing this, the Supreme Court held that judgments of the
Circuit and District Courts became liens in the same manner as judg-

ments of the state courts. Cooke v. Avery, 147 U. S. 375, 13 Sup. Ct. 340, 37 L. Ed. 209.

The law of Louisiana then in force, and substantially the same as now, required judgments of the state courts to be recorded in the office of the recorder of mortgages in the parish of Orleans and in the offices of the clerks of court as ex officio recorders of mortgages in other parts of the state, in order to become liens, or judicial mortgages, as they are termed in Louisiana. Civ. Code, arts. 3321, 3322, and 3388; Code of Practice, art. 545. As the judgments in favor of the United States were not recorded in the state office, they did not at that time become liens on any property that might have been owned by Kendall. U. S. v. Honor No. 1657, U. S. Circuit Court of Appeals, 5th Circuit (unreported).

Thereafter Congress passed Act Aug. 1, 1888, 25 Stat. 357 (Comp. St. §§ 1606, 1607). The act reads as follows:

Section 1: "That judgments and decrees rendered in a Circuit or District Court of the United States within any state shall be liens on property throughout such state in the same manner and to the same extent and under the same conditions only as if such judgments and decrees had been rendered by a court of general jurisdiction of such state: Provided, that whenever the laws of any state require a judgment or decree of a state court to be registered, recorded, docketed, indexed, or any other thing to be done, in a particular manner, or in a certain office or county, or parish in the state of Louisiana, before a lien shall attach, this act shall be applicable therein whenever and only whenever the laws of such state shall authorize the judgments and decrees of the United States courts to be registered, recorded, docketed, indexed, or otherwise conformed to the rules and requirements relating to the judgments and decrees of the courts of the state."

Section 2: "That the clerks of the several courts of the United States shall prepare and keep in their respective offices complete and convenient indices and cross-indices of the judgment records of said courts, and such indices and records shall at all times be open to the inspection and examination of the public."

Section 3: "Nothing herein shall be construed to require the docketing of a judgment or decree of a United States court, or the filing of a transcript thereof, in any state office within the same county, or parish in the state of Louisiana, in which the judgment or decree is rendered, in order that such judgment or decree may be a lien on any property within such county."

Section 3 was re-enacted by Act March 2, 1895, c. 180, 28 Stat. 814, but without material change or adding anything to the law. It is unnecessary to attempt to construe the proviso of section 1, as the law of Louisiana, as interpreted by the Supreme Court at that time, provided for the registration of federal judgments with like effect as state judgments. Adams v. Coons, 37 La. Ann. 305, decided April, 1885. Subsequently the Louisiana Legislature adopted Act No. 133 of July 5, 1916, giving to federal judgments the same effect as state judgments when recorded; but it was perhaps unnecessary, in view of the decision in Adams v. Coons, supra.

Upon the passage of the act of 1888 the clerks of the Circuit and District Courts for the Eastern District of Louisiana established judgment record books, with the proper indices and cross-indices, as required by the act, and the two judgments against Kendall were properly recorded therein.

On January 17, 1901, Kendall acquired a certain lot of ground and improvements in the city of New Orleans, which of course is coextensive with the parish of Orleans. By article 3328 of the Civil Code a judicial mortgage, or lien, attaches to after-acquired real property of the judgment debtor.

On March 17, 1905, Kendall sold the said property to Peter J. Untereiner, and later, on July 21, 1905, Untereiner sold it to Julius D. Tchopik, the plaintiff in rule herein. On August 17, 1912 (37 Stat. 311), Congress repealed section 3 of the act of 1888, the repeal to take effect on and after January 1, 1913.

[3-6] By article 3547 of the Civil Code, judgments in Louisiana prescribe by the lapse of ten years from their rendition, but any party in interest may have the judgment revived by simply issuing a citation, and this revival may be repeated indefinitely. Under the law of Louisiana it is not necessary that execution should issue upon a judgment to create a lien, or to keep it alive. The judgments against Kendall were not revived, but it is elemental that laches is not imputable to the government, and statutes of limitation do not run against either the United States or the state of Louisiana. U. S. v. Thompson, 98 U. S. 486, 25 L. Ed. 194; Bright v. New Orleans Railways Co., 114 La. 679, 38 South. 494.

It is contended on behalf of plaintiff in rule that the judgments against Kendall were not liens, and the act of 1888 could not make them so. With this I do not agree. The judgments were potential liens under R. S. § 967, and only required recording in the office of the recorder of mortgages for the parish of Orleans to become judicial mortgages under the law of Louisiana. Congress, by adopting the act of 1888, substituted recording in the office of the clerk of the Circuit Court for recording in the mortgage office in the parish of Orleans.

It is evident, therefore, that the lien of the judgments in favor of the United States attached to and continue to burden the real estate purchased by Kendall in 1901, unless they have become void by the repeal of section 3 of the act of 1888.

[7, 8] Repealing statutes are not to be construed as affecting vested rights. Memphis v. U. S., 97 U. S. 293, 24 L. Ed. 920; Wabash & Erie Canal Co. v. Beers, 2 Black, 448, 17 L. Ed. 327; Steamship Co. v. Joliffe, 2 Wall. 450, 17 L. Ed. 805; Hall v. Wisconsin, 103 U. S. 5, 26 L. Ed. 302; Society, etc., v. New Haven, 8 Wheat. 493, 5 L. Ed. 662. Therefore I do not think it was the intention of Congress, in repealing the third section of the act of 1888, to affect judgments that had been properly recorded in the offices of the clerks of the federal courts, although the operation of the act is postponed a few months. Rather is it to be considered that Congress wished to draw the line, on a convenient date, between judgments then in existence and those to be later rendered, and selected January 1st for that purpose.

[9, 10] From a consideration of this case it appears that judgments in the Circuit and District Courts of the United States in New Orleans fall into three classes:

263 F.—9

First. Those rendered prior to August 1, 1888, and not recorded. These created no liens, and if the judgment debtor owned real estate, and title passed out of him prior to recordation, it did so unburdened with any lien.

Second. Judgments recorded in the office of the clerk of the Circuit and District Courts of the United States at New Orleans from August 1, 1888, until January 1, 1913. These judgments are liens on any real estate in the city of New Orleans then owned by the judgment debtor or acquired by him during that period. With regard to private judgments, they prescribe in ten years from their rendition, and if not revived may be canceled in summary proceedings. With regard to judgments in favor of the United States or the state of Louisiana, they are imprescribable and continue to be liens on property of the judgment debtor indefinitely.

Third. Judgments rendered after January 1, 1913, which are .not liens unless recorded in the office of the recorder of mortgages in the parishes where the real estate is situate. Of course, no judgment is a lien on any property in the other parishes of the district unless recorded in the state office.

Considering the whole case, I must conclude that the United States has a lien on the property of Kendall acquired by him, as the judgments against him had been properly recorded. in the office of the clerk of the Circuit Court. The property passed from him burdened with those liens which are valid and existing to-day.

This is no more a hardship on plaintiff in rule than if the judgments had been recorded in the mortgage office. The judgment record book is open to the public, and the clerk is required by rule of court to issue certificates therefrom to the same effect as certificates of the recorder of mortgages, and at less cost, if interested parties do not wish to examine the records personally.

The rule will be discharged, at mover's cost.