TEXAS & P. RY. CO. v. LACEY.[†]

(Circuit Court of Appeals, Fifth Circuit. February 21, 1911.)

No. 2,071.

**1.** APPEAL AND ERROR (§ 193*)—OBJECTIONS—WAIVER.
An objection that a petition for negligent death of plaintiff's son does not show that the son was unmarried or childless, within Rev. Civ. Code La. art. 2315, as amended by Act No. 71 of 1884, giving the primary right of action for negligent death to decedent's minor children or widow, comes too late when first presented on error.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1226–1240; Dec. Dig. § 193.*]

**2.** PARTIES (§ 76*)—DEFENSES—CAPACITY TO SUE.
An exception to plaintiff's capacity to sue must be pleaded before issue joined.
[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 117–121; Dec. Dig. § 76.*]

**8.** EVIDENCE (§ 67*)—PRESUMPTIONS—CONTINUANCE OF CELIBACY.
Under the rule that a condition shown to exist at a given time is presumed to continue until the contrary is shown, a boy 18 years old, for whose death suit is brought by his father, is presumed to have remained unmarried, within Rev. Civ. Code La. art. 2315, as amended by Act No. 71 of 1884, giving the primary right of action for negligent death to decedent's minor children or widow.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88, 103; Dec. Dig. § 67.*]

**4.** CARRIERS (§ 320*)—PASSENGERS—FALL FROM PLATFORM—NEGLIGENCE—JURY QUESTION.
Whether a carrier was negligent toward a passenger killed by falling from a crowded car platform *held*, under the evidence, a jury question.
[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 320.*]

**5.** CARRIERS (§ 347*)—PASSENGERS—FALL FROM CAR PLATFORM—CONTRIBU-TORY NEGLIGENCE—JURY QUESTION.
Whether a passenger killed by falling from a crowded car platform was guilty of contributory negligence *held*, under the evidence, a jury question.
[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 347.*]

**6.** APPEAL AND ERROR (§ 1002*)—REVIEW—FINDINGS—CONCLUSIVENESS.
Finding of negligence on conflicting evidence should not be disturbed on review.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

**7.** CARRIERS (§ 306*)—CHARTERED TRAINS—INJURY TO PASSENGER—LIABILITY.
That the excursion train from which a passenger was crowded and killed was chartered by a private person did not relieve the company from liability for the death, where its employés were in charge of the train, and the charter contract authorized the conductor to prevent overcrowding.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1250; Dec. Dig. § 306.*]

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Action by John Lacey against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rev'r Indexes
185 F.—15            †Rehearing denied March 21, 1911.

Bernard J. Mayer and Chas. Payne Fenner (Howe, Fenner, Spencer & Cocke, on the brief), for plaintiff in error.

Armand Romain and Frank B. Thomas (Zengle, Thomas & Suthon, on the brief), for defendant in errror.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an action by John Lacey, plaintiff below, against the Texas & Pacific Railway Company, defendant below, to recover damages for the death of his son, Noyd Lacey. At the close of the evidence the defendant asked the court to direct a verdict in its favor. But the court refused the motion. The defendant asked a special charge, which was also refused. The case was submitted to the jury on issues made by a general denial of the plaintiff's petition and on the defense of contributory negligence. There was a verdict for the plaintiff and judgment for $3,000.

The refusal of the court to direct a verdict for the defendant is assigned as error. We will examine the several grounds upon which it is urged that the jury should have been so directed.

It is contended that the pleadings and evidence failed to show that the plaintiff had any right of action under article 2315 of the Revised Civil Code of Louisiana, as amended by Act 71, Acts of Louisiana 1884, p. 94. This statute authorizes an action for wrongful acts causing death, and confers the right to sue on the "minor children or widow of the deceased or either of them, and in default of these, in favor of the surviving father and mother or either of them." This action is by the father of the decedent, and the petition, although it states that the son when killed was only 18 years old, fails to state that he was unmarried or that he left surviving him no minor child or widow, and the evidence is silent on the question. No exception was filed to the petition, nor was the alleged defect in the petition and proof noticed in the court below. On the contrary, the case went to trial on the merits on an answer denying the averments of the petition and setting up special defenses that will be stated later.

If it had been pleaded in any way in the lower court that the petition was deficient in not averring that the decedent was unmarried, that court, if the defect had been held material, would have permitted the petition to have been amended. But the subject does not appear to have been mentioned. If the decedent had been married or had left surviving him a minor child, the fact could have been made to appear at any time from the filing of the answer to the motion for a new trial. The point, if it occurred to counsel—and it probably did not—was held in ambush till the case reached this court, when it came out in the open. We think it is too late to present that defense. Under the Louisiana practice, the defendant is not bound to answer specially to all the allegations of the plaintiff, but "must, nevertheless, if he intend to resist the action by means of some exception, plead the same expressly and positively in his answer, in all the cases hereafter prescribed; otherwise he shall not be permitted to avail himself of such exception afterwards." Garland's Rev. Code of Practice of Louisiana, art. 327. An exception, which if sustained would result in the dis-

missal of the suit, should be pleaded in limine litis. Id. art. 341. An exception to the plaintiff's capacity to sue must be pleaded before issue joined. Legendre v. Seligman, Hellman & Co., 35 La. Ann. 113. See, also, Adams & Co. v. Coons, 37 La. Ann. 305; Heirs of Mason v. Layton, 38 La. Ann. 675. If there were no statutes or local decisions to sustain the view, we would hold, nevertheless, that a defendant would not be permitted to successfully urge the alleged defect in this court after entering a general denial and trying the case on the merits in the lower court and having failed to suggest the alleged defect in that court.

But it is urged, also, that there was no proof that decedent was unmarried. From what we have already said, we might conclude that the conditions of the pleading did not call on the plaintiff for such proof. The petition averred, and the proof showed, that the decedent was only 18 years old. It is a matter of common knowledge that men do not often marry in this country before reaching 18 years of age. It would seem reasonable to indulge the presumption, till the contrary was proved, that a lad of 18 years was unmarried. Boys do not begin life married, and it is a rule that, where the existence at one time of a certain condition or state of things of a continuing nature is shown, the general presumption arises that such condition or state continues till the contrary is shown by either circumstantial or direct evidence. It would be presumed that a boy continued unmarried until 18 years of age. This view has prevailed against a defendant in a criminal case. The Supreme Court of New Jersey, in Gaunt v. State, 50 N. J. Law, 490, 491, 14 Atl. 600, said:

"The indictment, it is true, charges that the person with whom the defendant committed fornication was a single woman. The single state is, however, the natural, and, during early life, the only possible one; nor is there any period at which it is necessarily terminated or merged into marriage. In the absence, therefore, of testimony tending to the contrary, the presumption is that the celibacy which exists during puellescence continues. Therefore, until drawn into actual question, no affirmative testimony on this point was required from the prosecution."

It is contended that the verdict should have been directed for the defendant, (a) because the evidence failed to show the defendant's negligence, and (b) because the evidence showed that the decedent was guilty of contributory negligence per se, and that it was the direct cause of his death.

The petition charged that the decedent came to his death by the negligence of the defendant because it did not furnish adequate facilities for its passengers; because the car on which the accident happened was not equipped with a fender across the platform to protect or prevent passengers from falling off; and because of the reckless manner in which the train was jarred or jolted in switching onto the ferryboat. The answer, after a general denial, avers that Lacey's death was caused by his own negligence in that he was sitting on the railing of the platform or standing on the platform of the coach, and, on account of the train stopping suddenly to avoid running over a drunken man, that Lacey lost his balance and fell and was killed. The evidence relating to the accident embraces more than a hundred closely printed pages. The trial judge clearly and fairly submitted the questions

of the defendant's negligence and the decedent's contributory negligence to the jury, and, in doing so, said, "There has been great conflict in the testimony." A careful reading of the record shows that there is much conflict in the evidence bearing on the questions of negligence. In considering this assignment of error, we have only to decide whether the evidence was sufficient to make a question for the jury. We find evidence, if believed by the jury, sufficient to show that there was no railing on the platform of the car; that the car was so crowded that the defendant could not obtain a seat; that there was not standing room in the car; that, after the accident, when those standing on the platform attempted to go into the car, they could not do so, but got out of the car on the ferryboat. And the evidence was such as tended to prove that the defendant had nowhere else to stand or sit except on the platform, and that he would probably have been safe there except for the want of the railing with which the platforms of cars are usually equipped; and that, notwithstanding the defect in the car, he would have been safe—as the car was running slowly going up an incline—except for the sudden stop and jolt. There was also evidence to the contrary. The defendant offered evidence tending to show that the sudden stop was made to protect a drunken man on the track. But the jury might have justly inferred, if they believed the sudden stop was for that purpose, that the defendant would not have been thrown from the car had it not been defective.

We are of opinion, on the facts shown by the record, that the trial court ruled correctly in refusing to withdraw the questions of negligence and contributory negligence from the jury. Grand Trunk Railway Company v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Baltimore & Ohio R. R. Co. v. Griffith, 159 U. S. 603, 611, 16 Sup. Ct. 105, 40 L. Ed. 274; Washington & Georgetown R. R. Co. v. Harmon, 147 U. S. 571, 580, 13 Sup. Ct. 557, 37 L. Ed. 284. These cases all show that the policy of the law is to submit questions of negligence to the jury under proper instructions, for it is their province to note the special circumstances of each case. All agree to the rule —the only difficulty lies in its application—that when the evidence is conflicting, or when materially different inferences may be reasonably drawn from it, the question of negligence should not be taken from the jury. And after it has been fairly submitted to the jury and it has sustained the plaintiff's case, the appellate court should not interfere unless the evidence clearly and without conflict shows negligence as matter of law. 1 Thompson on Negligence, § 431.

The only other assignment of error is the court's refusal to give this charge:

"I charge you that if you believe from the evidence that one Leo Marquette chartered from the defendant an engine, baggage car, and six coaches for the purpose of running an excursion from Thibodaux, La., to New Orleans, and that the said crew furnished by the defendant only operated said train, and that the said Leo Marquette or his associates sold the tickets to the passengers on said train and especially the ticket to Noyd Lacey for his passage on said train, and you further believe that the defendant did not sell any ticket to said Lacey for passage on said train, then I charge you that this defendant was under no obligation to furnish to the said Lacey a seat or place to stand inside said coach."

The evidence showed that the defendant had, under a written contract, furnished Leo Marquette a train, consisting of an engine, baggage car, and six coaches, with a full crew, for the purpose of running an excursion from Thibodaux to New Orleans. If the charge had been given, its effect would have been to have shifted the responsibility of furnishing passengers seats or even a place to stand on the cars from the defendant to Leo Marquette who had chartered the train for the excursion.

The Texas & Pacific Railway Company, the defendant below, is a common carrier exercising franchises and powers conferred on it in a large measure for the public good. It is expected to use such powers —it is charged with the responsibility of properly exercising them. If it had, in terms, made a contract providing that for a consideration it would furnish Marquette an excursion train, and that he and not the company was to be liable for any injury arising from the overcrowding of the cars, such contract, we think, would be void. It would be against public policy to permit the company to operate its road in the name of Marquette and at his risk only for negligence in its operation. Thomas v. Railroad Co., 101 U. S. 71. 25 L. Ed. 950; Muntz v. Algiers & G. Ry. Co., 111 La. 423, 35 South. 624, 64 L. R. A. 222, 100 Am. St. Rep. 495. But the contract itself shows that the defendant retained the absolute control of the operation of the train and the power to prevent the overcrowding of the cars. The contract, after stating the consideration—$368—which Marquette was to pay for the excursion, contains this provision:

"No intoxicating liquors to be sold on this train, which shall be in charge of conductor in employ of railway company.

"In the event it should be necessary to have additional coaches, then the party of the first part agrees to furnish additional coaches, provided reasonable notice is given, over and above the number specified above, at rate of thirty-six & $80/100$ dollars ($36.80) per coach for the round trip. Coaches not to be crowded beyond seating capacity. In the event the coaches are overcrowded, and no other coaches available, the conductor shall refuse to make other stops to pick up passengers. Under no circumstances are passengers to be allowed to ride in baggage cars."

The contract itself seems to indicate that it was the duty of the railway company to prevent the dangerous overcrowding of the cars. It provided that "coaches not to be crowded beyond seating capacity." No one but the conductor and the crew in charge could enforce this provision. The contract provides the manner in which the conductor shall prevent the overcrowding. "In the event the coaches are overcrowded, and no other coaches available, the conductor shall refuse to make other stops to pick up passengers." The instruction was properly refused, we think.

The judgment of the Circuit Court is affirmed.

NOTE.—The following is the charge to the jury, delivered by Foster, District Judge:

"Gentlemen of the Jury:

"This is a case in which John Lacey claims $10,000 damages from the Texas & Pacific Railroad Company for the death of his son, alleged to have been caused by the negligence of the defendant.

"The negligence alleged is that the defendant permitted the overcrowding of its cars, and that the car upon which the accident occurred was not equipped with a fender across the platform to protect the passengers from falling off, and that by the negligent and reckless manner in which the train was jarred and jolted, in switching from the ferryboat, said accident was caused.

"The answer denies the truth of the allegations of the petition. And it sets up further that the death of Lacey was caused by his own contributory negligence, in that he was sitting on the railing of the platform or standing on the platform of the coach, and on account of the train stopping to prevent the running over of a drunken negro man, who had fallen in attempting to get on the train, the said Lacey lost his balance and fell to the ground; that he had been warned by the employés of the defendant company not to stand or sit on the platform, but to go inside of the coach; that there was a sign on the door of the coach, warning all persons not to stand on the platform; but that, in spite of the warnings and sign, the said Lacey continued to stay on the platform; and that his death was attributable directly to that cause.

"You are the sole judges of the facts in the case; and, while there has been a great conflict of testimony, it is your duty to resolve the conflict. In doing so you must endeavor to have all the witnesses speak the truth, and, if you cannot do so, then you must reject the testimony of those whom you do not believe, and give weight to the testimony of the witnesses whom you do believe.

"You are not at liberty to arbitrarily reject the testimony of any witness; you must have some reasonable cause for rejecting the testimony.

"You are not to allow the color of the witnesses for either side to influence you one way or the other, and you are not to count the witnesses in order to weigh the sufficiency of their testimony. In other words, if you believe the testimony of one witness, you would be authorized in rejecting the testimony of all the other witnesses, if you do not believe them.

"The defendant could not delegate its burden as a common carrier. The fact that it had made a contract with other parties for the running of this excursion does not relieve it of its duties as a common carrier. It was not obliged to furnish cars for an unusual number of people, whom it did not expect. In other words, if you find that more people came to take passage on this excursion train than had been reasonably anticipated by the railroad company, it would not be negligence on its part if they all failed to find seats. On the other hand, it would not be negligence for a passenger to resign his seat to some one less able to stand than himself, nor if he were thereafter to stand on the platform of the car, if it was impossible or inconvenient for him to stand on the inside.

"Of course, the passenger is obliged to look out for his own safety, to a certain extent, while the railroad is obliged to furnish him with safe and adequate transportation and equipment.

"The burden of proof is on the plaintiff to establish not only that the accident occurred, but that the accident occurred through the fault or negligence of the defendant. The mere fact that an accident occurred is not, of itself, proof that the defendant was negligent; but, in order for the plaintiff to recover, it must be shown that the proximate cause of the death of the deceased was the negligence of the defendant company.

"Now, I charge you that if the crew in charge of this train ordered the emergency brakes to be applied, believing that it was necessary to save the life of some person, though the jar might have been greater than usual, it would not have been negligence on the part of the defendant company unless it also had knowledge of the imminent danger to the deceased.

"So as to the railing on the platform. The mere fact that the railing might not be there would not warrant you in finding against the defendant, unless you were sure that the absence of the railing was the proximate cause of this man's death.

"So, too, you must take into consideration whether or not the danger was real or apparent. And, if you find that the deceased ought to have known it was a more dangerous place than anywhere else on the train to stand, that fact should bar a recovery on his part.

"And, too, if he had an opportunity to secure a seat in the car at any time before his death, or a safe standing place in the car, and he ought to have

known that standing on the platform was extremely dangerous, it was his duty to go to the safer place, and he could not recover in this action.

"I charge you that it is the law of Louisiana that the races must be separated on railroad cars of this character. Therefore it is immaterial whether or not there was room for people in the white cars, as this deceased was a colored man and had no right in there.

"A common carrier of passengers, of course, is charged with the highest degree of care consistent with the reasonable and ordinary running of its trains; and you will take into consideration, in determining whether or not it was negligence, whether that degree of care had been exercised in this case.

"There are two instructions asked for by the defendant, which I will give:

"The fifth:

"'If you believe from the evidence that there was standing room in said train, or that there was a place inside of said coach where the said Lacey could have ridden, and there was no necessity for the said Lacey's being on the platform of said coach, but that the said Lacey voluntarily went out and stood on said platform in spite of repeated warnings on the part of defendant's agents, and in direct violation of a known rule of defendant's prohibiting passengers from riding or standing on said platform, then I charge you that the said Lacey was guilty of contributory negligence, and that you must find for the defendant.'

"The sixth:

"'If you believe from the evidence that one Gus Parker, a drunken negro, in attempting to get on said train while in motion, fell under said train, and that the agent of said defendant seeing the great and imminent danger of the said Gus Parker's being run over and killed, and in an honest endeavor and effort to save his life, not knowing the perilous position in which the said Lacey was sitting on the front platform of the rear coach of said train, signaled the engineer of said train to immediately stop said train in order to avoid the running over and killing of the said Gus Parker, and that said train was immediately stopped, and that thereby the life of Gus Parker was saved: and even if you further believe that said stopping of the said train was the cause of said Lacey's death—then I charge you that the stopping of said train in such a sudden manner, in an endeavor to save and preserve human life, was not negligence on the part of said defendant, and you must find for the said defendant.'

"These charges you take, gentlemen, of course, in connection with the general charge of the court.

"When you have determined the liability in the case, if you find that there should be a recovery by the plaintiff, I charge you that he is entitled to recover all damages that the deceased would have recovered, and that would be for his physical and mental pain and anguish; that is an amount which the jury must assess. It is not susceptible of proof in any way, and is entirely in the province of the jury."