NATAL ET AL. v. LOUISIANA & ARK. RY. CO.

———

(November 16, 1931. Opinion and Decree.)

———

Swords & Jung, of New Orleans, attorneys for plaintiffs, appellants.

Milling, Godchaux, Saal & Milling, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. Plaintiffs seek reimbursement for the loss sustained in the death of their fourteen-year-old son, who died as a result of a collision between the automobile in which he was a guest passenger and a train of defendant railway company.

The accident occurred where the track of the railway company crosses Palm street in the upper section of the city of New Orleans near the parish of Jefferson. The time of the happening was about 6:15 in the morning of July 8, 1930, during broad daylight and in clear weather.

The automobile, driven by an eighteen-year-old friend of the deceased, was on its way in Palm street towards the downtown or business section of the city, and the train was proceeding out of the city on its regular schedule.

Palm street and the railway tracks intersect, but not at right angles, and are so located that the automobile and the train, as they approached the point of intersection, almost faced each other.

The charges of negligence, as they appear categorically set forth in the brief of plaintiffs, are as follows:

"1. That it was negligent, by reason of the failure of the train crew to give adequate warning, by sound of whistle and bell, as the train approached the crossing.
"2. That it was negligent, by reason of its failure to adequately safeguard the crossing, by either gates, a watchman or automatic signaling device.
"3. That its principal negligence, and the one on which plaintiffs chiefly rely, resulted from defendant operating its train over said crossing at an excessive and dangerous rate of speed, in view of the crossing's mode of construction, the physical facts surrounding it, its location in a populous city and over a heavily traveled thoroughfare, and the customary manner of its crossing by automobilists."

The defenses are that the train was operated at a moderate speed and that all necessary and reasonable signals and warnings were given; that the automobile was being driven at a reckless and excessive speed; that no proper lookout was maintained, and that the recklessness of the driver was so apparent and continued for so long a time that it was negligence on the part of the deceased, himself, to fail to protest; that, in fact, he acquiesced in this carelessness.

The suit was originally brought against both the railway company and Ben Gill, Sr., father of the minor who was driving the automobile, but, prior to the trial, it was dismissed as to Gill.

From a judgment in favor of defendant railway, plaintiffs have appealed.

We will consider in order the three charges of negligence, on which the petition is based, in an effort to determine whether there was any blame to be attached to the employees of defendant, or growing out of the operation of the train, or to defendant company, itself, in that no proper and adequate safeguards were maintained, because until it appears that the defendant was at fault, there is no necessity to consider the alternative defense of contributory negligence on the part of the deceased.

The first charge is that the train operatives were negligent in that they failed to "give adequate warning, by sound of whistle or bell as the train approached the

crossing." The evidence with regard to the giving of warning signals is conflicting. That on behalf of defendant is positive; that is to say, the witnesses testified affirmatively that they heard the signals, whereas that on behalf of plaintiffs is negative; the witnesses merely stating that they heard no warning. In such a situation where the number of witnesses and the credibility of witnesses is about evenly balanced, positive testimony must prevail over negative, and we, therefore, conclude that the signals were sounded. In fact, counsel for plaintiffs, with commendable frankness, concedes that on this point the evidence preponderates against the charges made by his clients and he states in his brief that "it would be futile for us to burden the court with the resolution of this controversial point."

We next consider the second charge of negligence, that the crossing was not adequately safeguarded, and that either a gate or a watchman or an automatic warning device should have been maintained.

It is conceded by counsel for plaintiffs that "in the absence of a statute or ordinance requiring the railroad company to guard the crossing with gates, or by a watchman, its failure to do so is not negligence per se."

We have been referred to no statute or ordinance requiring gates or a watchman or an automatic signaling device, and it follows that it was not negligence, per se, for defendant to have failed to maintain such safeguards. It is argued, however, that, because of the extremely hazardous nature of the particular crossing, it was negligence, as a matter of fact, for the railroad to rely on the protection afforded by the giving of the simple warning customary in rural communities where traffic is light and danger slight.

The record shows that on the date of the accident, Palm street was being used, and, for about three or four weeks prior thereto, had been used as the only traffic artery between the upper limits of the city of New Orleans and that suburban section commonly known as Metairie Ridge. This, of course, made of that street a much traveled thoroughfare, and there is no doubt that at busy periods of the day a fairly constant stream of vehicular traffic passed over the crossing. Yet the evidence shows that at that time in the early morning only a few automobiles were on the street, and no unusual or extreme hazard existed by reason of congested traffic.

That the view of the driver of the automobile was almost entirely unobstructed when he reached a point within 200 feet or so of the track is very evident from the testimony and, also, conclusively appears from an examination of the photographs which we find in evidence and we find no sufficient basis to sustain plaintiffs' contention that the view of the driver was appreciably obstructed by trees, weeds, or shrubbery. True it is, that from the direction from which the automobile was approaching, the view of the driver was interfered with by trees, until he reached a point nearly 200 feet from the track, but, after passing the trees in question, anyone who wishes to do so may look and if he does look he will have a clear vision of a train approaching on the track. At no point are these trees nearer to the track than 175 feet and we cannot accept as sound the argument that the view of an approaching train is obstructed where the obstruction is located at so great a distance from the track itself. After passing the obstruction there is ample time for an automobile, operated at any reasonable speed, to be stopped before reaching the track. The track was

slightly elevated above the level of the surrounding ground and a warning device and a "stop sign" made it very apparent that a railroad crossing existed.

We conclude that, at the time of the accident, there was no extraordinary hazard resulting from the physical circumstances or nature of the crossing sufficient to place upon defendant the legal duty to maintain crossing gates or an automatic warning device or a watchman.

The third charge of negligence is that the speed of the train was excessive and dangerous in view of the so-called peculiarly hazardous condition of the crossing; its location in a populous city, and in view of the speed at which automobilists customarily operate their cars at that point.

The train consisted of a locomotive, a tender and a few coaches. It came to a stop in less than 200 feet after striking the automobile. The estimates of the several witnesses as to the speed of the train vary greatly, but the short distance traveled by it after the collision leads to the conclusion that the speed could not have been excessive, as modern steam trains are very heavy and, when traveling at a high speed, carry great momentum, which prevents their stopping within short distances. It was shown conclusively that the train had left the station less than three miles away, some fifteen minutes before the accident. Though it had stopped once for passengers and once for orders, the fact that it had consumed fifteen minutes in traveling less than three miles would indicate moderate rather than excessive speed.

We have already discussed the charge that the volume of automobile traffic made it imperative that special precautions be taken and have concluded that, at least at that time in the early morning, there were not, in that locality, sufficient automobiles to create a great or unusual hazard.

Plaintiffs' contention that the custom of motorists to drive fast over the crossing and to fail to slow down upon reaching it and that this custom placed upon the train operatives a greater duty to exercise care than would otherwise exist raises a most interesting question.

Conceding that a train is operated at a reasonable and careful speed over a particular crossing, and without undue danger to motorists also driving moderately and with ordinary care, can it be said that the operatives of such train are negligent because they fail to take into consideration that a custom has been established by autoists to drive in that particular neighborhood at excessive and dangerous speeds? We are not prepared to say that such a custom, if clearly proven, would not place extraordinary duty on operatives of trains, but here no such custom is shown, as the particular witness relied on to establish the existence of such a practice proved no more than that some people are careless in negotiating the crossing. The same carelessness is exhibited by a certain number of autoists at all crossings, but we do not find from the record that a large majority of motorists, at this crossing, operated their cars at excessive speeds.

Plaintiffs rely largely on two decisions of the Supreme Court of Louisiana, Downing v. M. L. & T. R. R. & S. S. Co., 104 La. 508, 29 So. 207, and Lampkin v. McCormick, 105 La. 418, 29 So. 952, 954, 83 Am. St. Rep. 245, and they contend that, in compliance with the doctrine announced in these cases, the defendant railroad company in the instant case, should have been particularly careful in the operation of its train, and in the maintenance of warnings,

because of the fact that the crossing in question is located in a large, populous city. There can be no doubt that it is negligence to run trains at high speeds through sections of populous cities, but the facts of each case should be taken into consideration and no definite, positive rule can be laid down which will govern in all. In each of the two cases to which we have referred a most dangerous situation was shown in that trains were operated on parallel tracks with the result that in each case the injured party was confused by the train on the other track and did not realize that another train was approaching on the track on which he was standing. In fact, in discussing the reason for the decision in both cases, the Supreme Court in the Lampkin case, which was the later of the two, said:

"This case resembles, in a number of its features, that of Downing v. Southern Pacific Railroad Co. (recently decided by this court) [104 La. 508] 29 So. 207. In both cases there was the killing of a man, for want of proper caution, by the backing down of a freight train. In both cases the freight train moved opposite a danger point in the streets of a town simultaneously with the passing of a passenger train upon a parallel track, when the attention of persons standing along or between the tracks would be likely to be attracted by the passenger train, and when the noises from the passenger train would be likely to conceal the approach of the freight train."

We have reached the conclusion that the defendant company was guilty of no negligence, and therefore there can be no recovery, regardless of whether or not there was any duty in the deceased to protest against the excessive speed and the continued negligence which was being exhibited.

The judgment appealed from is affirmed.