**SLAYTER v. TEXAS & P. R. CO. et al.**

**No. 5649.**

Court of Appeal of Louisiana. Second Circuit.

June 1, 1938.

John R. Hunter & Son, of Alexandria, for appellant.

Hudson, Potts, Bernstein & Snellings, of Monroe, and Hawthorn, Stafford & Pitts and Frank H. Peterman, all of Alexandria, for appellees.

TALIAFERRO, Judge.

Plaintiff instituted this suit against the Texas & Pacific Railroad Company and Guy A. Thompson, as Trustee of the Missouri Pacific Railroad Company, to recover damages alleged to be due him as a consequence of a collision between his Chevrolet truck, then being operated by him, and a freight car of the latter company near the eastern boundary of the city of Alexandria, Louisiana, at about the hour of 8 o'clock P. M., September 17, 1936.

Plaintiff was driving west toward the city on a graveled road (the easterly extension of Vance Avenue in said city), which runs through the mill and lumber yards of the Ferd Brenner Lumber Company. The freight car which collided with the truck was the most southerly of a train of ten, then being backed slowly in a southerly direction on a main track of the Texas & Pacific Railroad Company. The graveled road crosses this track and four others there at right angles. The said main track is the second of the five, counting from the east. The lumber yard is adjoined on its west side by the right of way of the Texas & Pacific Railroad Company. This yard is without the City limits.

For a cause of action, plaintiff in substance alleges that as he approached said crossing, he reduced the speed of his truck to five miles per hour or less, at the time keeping a proper lookout ahead; that observing no trains on said track, he undertook to negotiate the crossing and that as he reached approximately the center of it, his truck was violently run into and struck by the rear car of said train and, because of the suddenness of the collision, he was unable to avert it. He charges that said crossing was not protected by a flagman or other servant of defendants; that said train was backed into said crossing without the giving of any warning whatever of its presence or approach, and particularly without the sounding of a whistle, ringing of a bell or the playing of any lights thereon; and this too, notwithstanding the operatives of said train were well acquainted with said crossing and knew of its dangerous character, and further well knew that it was constantly used by pedestrians and vehicles.

In these respects it is charged that defendants violated the mandatory provisions of Act No. 12 of 1924. This is error as this Act does not apply to cities of a population of more than 10,000, and Alexandria's population exceeds this number.

Defendants filed separate answers. Plaintiff's counsel now admits that the Texas & Pacific Railroad Company cannot be held responsible to him for the results of the accident. For this reason we omit epitome of this defendant's answer and also of the allegations of the petition designed to encompass it as a proper defendant.

The Missouri Pacific Railroad Company denies all of the allegations of the petition which purport to disclose lack of negligence on plaintiff's part as a cause or contributing cause of the collision, and likewise denies those allegations which affirmatively ascribe to defendant's negligence responsibility for the collision. It is specifically charged that plaintiff did not stop, look or listen for trains on said tracks before attempting to cross them, a duty imposed upon him by law; nor did he in any other manner exercise ordinary care for his own safety before entering said crossing, and for this reason he did not observe the approaching train hard by. These omissions of duty and acts of negligence, defendant alleges, primarily caused or, at least, contributed to the accident, and upon them as a basis a plea of contributory negligence is urged as a bar to plaintiff's recovery.

Plaintiff's demands were rejected and his suit dismissed. He has appealed. The judgment recites that plaintiff's demands against Guy A. Thompson, Trustee of the Missouri Pacific Railroad Company, are rejected. No mention is made of his demands against the Texas & Pacific Railroad Company.

Plaintiff was engaged in hauling pine knots to the plant of a company located less than a mile east of the situs of the collision. He made two or three trips over the crossing daily, some being at night, and was returning home from a delivery when the accident happened. He was accompanied by a young man by the name of Mosely, who was killed in the accident. The truck was without a cab, had a windshield and its headlights were burning brightly. Its driver could see in all directions without obstruction of any kind.

We are convinced from the testimony that the truck was moving at a speed of from 20 to 25 miles per hour when the collision occurred. We are as equally convinced that plaintiff did not bring it to a stop before trying to cross the tracks. He testified that he did so and then looked and listened for trains, but saw none. His own petition does not aver that he stopped. In a written statement a few days subsequent to the accident, he declared that he slowed down at the crossing but did not stop. To some of the train crew immediately after the collision, he stated that he was hurrying home and that his windshield was covered with mud. He observed the train in time to jump from the truck and save his own life. Undoubtedly had he stopped the truck and looked for a train, he would have seen it in time to avoid the collision, especially if he had been traveling no faster than as testified to by him. The elevation of the tracks was not over two feet above that of the graveled road. In said written statement he said he heard someone holloing just prior to the impact, but paid no attention to it, thinking perhaps that it came from some negro houses near by. He saw no lights on the cars.

C. C. Lowery and R. L. Hickman were switchmen on the moving train. Each was on top of the car which collided with the truck. We are convinced from their testimony that each held a lighted lantern in his hand as the train approached the crossing. Each lantern diffused a bright light eight or ten feet in diameter. The lights were being displayed by the switchmen at the time. They were of the type customarily used for such purpose. These switchmen and other members of the crew testified that the train was moving not more than eight miles per hour, and we think this is correct. We are also convinced that before the train entered the crossing, a car's length or more, these two switchmen discovered plaintiff heedlessly approaching it, and that they holloed loudly to him in an effort to attract his attention to the dangerous situation being created by his carelessness. This holloing was heard by a night watchman of the mill approximately 200 yards east. As soon as plaintiff's perilous action was discovered and before the train entered the intersection, a stop signal as in emergency was relayed to the engineer. All means available were quickly employed to check the train. The effectiveness of these efforts is best attested by the fact that the train was stopped when the southerly car was only some 15 feet below the intersection. The truck was pushed this distance. It required an appreciable lapse of time to give and relay the signal. The whistle of the train did not blow nor was the bell rung as it moved toward the crossing. An ordinance of the City prohibits, under penalty, the blowing of whistles by railways therein "whereby the peace and quiet of the neighborhood is disturbed."

On either side of this crossing there are elevated Louisiana Stop law signs at the usual distance from the tracks. At night the area embraced in the crossing is adequately lighted by elevated electric lights on both sides. From a point 70 feet or about, east of said main track, the view up and down the tracks is unobstructed for several hundred feet. Plaintiff admits this. East of this point stacks of lumber interfere with the vision in said directions.

Plaintiff was guilty of gross negligence in attempting to cross the tracks without observing that most elemental rule, recognized and enforced by all the courts of the country, viz., that which imposed upon him the imperative duty to stop, look and listen for trains. Had he done this, there would have been no accident. He was intimately acquainted with the nature and hazards, if any, of the crossing. He knew that trains on the main and switch tracks passed back and forth regularly and frequently. And, of course, he knew that if, in attempting to pass over the tracks,

he was struck by a train, death or great bodily harm would almost inevitably result. In view of all this, he chose to gamble with fate, and lost. Surely his own gross negligence and lack of exercise of any care and precaution at all, in the respects mentioned, stand as an insurmountable barrier to his efforts to compel the defendant to compensate him for damages so easily traceable to his own dereliction; and this too, even though defendant be found not free of the negligence, in whole or in part, charged to it as the proximate cause of the collision. It is most improbable that the collision would not have happened even though the engine's whistle had been blown and/or its bell rung in the manner plaintiff contends should have been done. The engine was over 400 feet north of the crossing. If he failed to see the lights on the moving car, less than 100 feet from him, and did not correctly interpret the loud holloing of the two switchmen on top of the car, most likely the sounding of whistle and/or bell so far away would not have attracted his attention or caused him to have altered his course. Being motivated by the desire to return home (several miles north of Alexandria) as quickly as possible, he seems to have been oblivious to potential dangers athwart his path of travel. Even though it be conceded arguendo that plaintiff did stop, look and listen before attempting to cross the tracks, his position is not appreciably improved. When a motorist, facing a railroad track, stops, looks and listens, he but discharges half the duty which so heavily rests upon him. He is required to go a step farther. After stopping, he must see that which may be seen and hear that which may be heard by him. Failure in these respects renders abortive the other precautionary acts.

It is not contended, except as heretofore referred to, that there was in existence any law or ordinance making it obligatory upon defendant to protect said crossing by a flagman or mechanical device to warn traffic of the approach of trains, nor that notice of the approach of trains should be given by the ringing of the bell. The blowing of a whistle for said purpose is specifically outlawed. The physical features of the crossing disclose no unusual or hazardous phases. No other train was there to complicate the situation. Surely conditions there were such as not to require extraordinary precautionary measures for the protection of the traveling public;

and, in view of all the facts and circumstances, we think the acts of defendant's servants, in the respects herein stated, with special reference to the slow speed of the train, absolve defendant from the charge of negligence as a cause or contributing cause of the accident.

The books are full of cases which turned for decision upon facts very much similar to those herein and upon principles whose application is decisive of the present case. However, no two cases are identical in their facts and, in a large measure, each case must be disposed of from its own peculiar facts.

The following cases support our conclusion that defendant was free of negligence as a contributing cause of the accident: Moschetto v. Illinois Cent. Railway Company, 15 La.App. 505, 131 So. 500; Concordia Baking Company v. Louisiana & Arkansas Railway Company, 7 La.App. 301; Natal v. Louisiana & A. Railway Company, 18 La.App. 50, 137 So. 600; Plummer v. Gulf, M. & N. R. Company, La.App., 153 So. 322, and Washington v. Yazoo & M. V. R. Company, 11 La.App. 635, 124 So. 631.

In the last of these cases, the court specifically found and held (page 633): "No ordinance of the city or rule of the defendant required that a flagman or mechanical device to warn of the approach of trains be stationed at the crossing, or required the train to stop before crossing the street, or move at a slower speed than 6 miles an hour, or that one of the train crew be sent ahead of the train to flag the crossing; and, in the absence of such ordinance or rule, the omission to do these things was not negligence."

In Loftin v. Louisiana Ry. & Nav. Company, 135 La. 33, 64 So. 972, the Supreme Court held the following, which fits the present case like a glove: "Negligence of those in charge of a locomotive in failing to blow the whistle, on approaching a crossing, would not entitle plaintiff to recover, where it was followed by the negligence of plaintiff's decedent in recklessly going upon the track without stopping, looking, or listening, as it would not be the sole proximate cause."

In Tucker v. Illinois Cent. Railway Company, 141 La. 1096, 76 So. 212, the court reaffirmed principles, sustained by a long list of cases therein cited, which uniformly held (page 213): "No failure on

the part of the railroad company to do its duty will excuse any one from using the senses of sight and hearing, upon approaching a railway crossing, and whenever the due use of either sense would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence, without any reference to the railroad's failure to perform its duty."

For the reasons herein assigned, the judgment appealed from is affirmed with costs.