**ILLINOIS CENT. R. CO. v. AUCOIN.**

No. 13764.

United States Court of Appeals
Fifth Circuit.

April 18, 1952.

984

Paul M. Hebert, Baton Rouge, La., for appellant.

J. H. Percy, Jr., Walker P. Macmurdo, Baton Rouge, La., for appellee.

Before HOLMES, BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This appeal is from a judgment for plaintiff below, entered upon a jury verdict, in an action to recover for personal injuries and property damage resulting from a grade crossing collision between an automobile operated by plaintiff and a train operated by defendant railroad company.

Defendant below denied plaintiff's charge that it was negligent in operating its train at excessive speed and in failing to give timely, adequate and effective warnings of the train's approach. *Per contra*, defendant charged that plaintiff was guilty of contributory negligence, which was the sole proximate cause of the collision because, disregarding whistle and bell warnings from the locomotive, he drove his car upon the tracks without looking in the direction from which the train was approaching, and stalled it on the tracks immediately ahead of the approaching train, which negligence, defendant asserts, bars a recovery.

The collision occurred during daylight hours, where defendant's main line tracks intersect Government Street, in the commercial area of Baton Rouge, Louisiana.

At this point, defendant's main line double tracks run north and south. Government Street intersects these tracks at right angles, and "dead-ends" into First Street which parallels the railroad tracks just to the west of the latter. Immediately to the east of the northbound main line track, on which the train was approaching, there is a siding or loading track which parallels the easterly main line track. To the east of and facing upon the siding, and immediately South of Government Street, is a warehouse in which plaintiff was employed. Plaintiff was familiar with the crossing, and with the schedule of defendant's daytime trains. He traveled over the crossing frequently. There were no mechanical devices to protect the crossing.

At the time here involved, plaintiff had left the warehouse, entered his car, which was parked on the south side of Government Street just north of the warehouse about 40 feet from the easterly main line track, and was driving westerly along the south side of Government Street toward First Street, when he came into collision with a northbound passenger train as he was crossing the easterly main line track. Plaintiff suffered severe physical injuries. His car was demolished.

When plaintiff started across the tracks, there were one, two or possibly three box cars spotted on the siding, in front of the warehouse. The warehouse and cars being immediately south and east of the intersection of the railway tracks and Government Street, they tended to substantially obstruct the vision toward the south of a traveler proceeding, as was plaintiff, across the track from east to west along Government Street.

The train in question was approaching from the south. It was 10 to 15 minutes behind schedule. It was due to stop at a passenger station which was four blocks north of Government Street. Approximately 360 feet north of Government Street, where the collision occurred, there is a switch which must be thrown by a member of the train crew, so that the train approaching from the south can leave the main line and enter the passenger station standing track. This would require the

train to come to a complete stop about 360 feet north of the point of collision. When the collision occurred the train was apparently slowing down to stop at the switch, and then at the passenger station. Plaintiff, who was familiar with the schedule, testified that he thought this train had already passed when he started across the track. There is credible evidence that the whistle was sounded at each of several crossings south of Government Street, as the train approached, and that the bell was ringing at the time of the collision. On the other hand, there is more than mere negative testimony to the contrary.

An ordinance of the City of Baton Rouge limits trains to a speed of eight miles per hour within the corporate limits, and the railroad's rules fix a six mile speed limit, at the point of collision. The testimony as to the speed of the train ranged from eight miles an hour up to forty. Some of these estimates are probably too high, some perhaps too low. There is credible evidence that the train was proceeding substantially in excess of the prescribed speeds. It traveled 171 feet with the emergency brakes applied, before stopping.

The circumstances shown in evidence present a typical jury question. The evidence is replete with conflict. Every automobile driver is necessarily guilty of some degree of inattention when he collides with a railroad train in broad daylight. But whether such inattention amounts to negligence in the circumstances, and if so whether that negligence, or intervening negligence on the part of the railroad company, or both, was the proximate cause of the collision, is primarily a jury question. So also is the extent to which vision toward the south was obstructed by the warehouse and box cars, the latter placed there by the railway company, and the effect of this situation upon the use of due care both by plaintiff and the railway company. The evidence as to the number of box cars varies, some witnesses said two, some three. The plaintiff himself at different times fixed the number at one, two, and three.

In view of the evidence as to the speed of the train and the warnings of its approach, which was in striking conflict, and in view of the lack of protective devices at this crossing in a commercial district of a populous city, it can not be said as a matter of law that the railroad company was free from negligence.[1] Nor, in view of the obstruction, created in part by the railway company itself, which impeded the view toward the south of the crossing, and in view of plaintiff's testimony, corroborated by another witness, that he stopped his car, looked and listened, before going on the track, can it be said that plaintiff was guilty of such contributory negligence as would bar his recovery as a matter of law, as in Illinois Central R. Co. v. Leichner, 5 Cir., 19 F.2d 118, and similar cases relied upon by defendant, even though there is also evidence that whistle and bell warnings were sounded. These are countervailing considerations, to be resolved by a jury.[2] The facts also differ from those in Allen v. Texas & P. Ry. Co., 5 Cir.1952, 195 F.2d 545.

As reasonable minds might differ as to the conclusions to be drawn from the conflicting facts here presented, it is for a jury to say which of these parties failed to exercise care commensurate with the circumstances.[3] No reason appears to disturb the jury's verdict awarding plaintiff $4250.-00.

Affirmed.

1. Peart v. Orleans-Kenner Traction Co., 11 La.App. 11, 123 So. 822; Sundmaker v. Yazoo & M. V. Ry. Co., 106 La. 111, 30 So. 285; Eichorn v. New Orleans & C. R. Light & Power Co., 112 La. 236, 36 So. 335. Compare Eggleston v. Louisiana & A. Ry. Co., La.App., 192 So. 774; Natal v. Louisiana & A. Ry. Co., 18 La. App. 50, 137 So. 600; Washington v. Yazoo & M. V. Ry. Co., 11 La.App. 635, 124 So. 631

2. Compare Pittman v. Gifford-Hill & Co., Inc., La.App., 188 So. 470; Aaron v. Martin, La.App., 167 So. 106.

3. Henwood v. Wallace, 5 Cir., 159 F.2d 263; Texas & P. Ry. Co. v. Lacey, 5 Cir., 185 F. 225.