(73 South. 242)

No. 21800.

FOREMAN et ux. v. LOUISIANA WESTERN RY. CO.

(Oct. 30, 1916. .Rehearing Denied Dec. 11, 1916.)

*(Syllabus by the Court.)*

1. RAILROADS ☞350(6) — OPERATION — ACCIDENTS AT CROSSINGS—QUESTION OF FACT.

It is a question of fact to be determined from the evidence whether a railroad train, moving within municipal limits, was being run at a rate of speed unsafe and dangerous to the public; so as to amount in law to an omission to use reasonable care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1160; Dec. Dig. ☞350(6).]

2. RAILROADS ☞316(2)—OPERATION—ACCIDENTS AT CROSSINGS—CARE REQUIRED.

The rule, that the highest rate of speed consistent with the safety of their passengers is permissible to railway trains, has its exceptions, and one of these arises where a train enters the limits of a city or town where people congregate and pass to and fro in numbers. Then it is for those in charge of a train to have a duty for those in the inside and also for those on the outside.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1007; Dec. Dig. ☞316(2).]

3. RAILROADS ☞327(1) — OPERATION — ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—CARE REQUIRED.

It is the duty of one approaching a railroad crossing in the country, or in a sparsely settled village, to stop, look, and listen before crossing the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043, 1045; Dec. Dig. ☞327(1).]

4. NEGLIGENCE ☞80 — ACTION — CONTRIBUTORY NEGLIGENCE—EFFECT.

Where one contributes to an accident, he may not recover damages against the defendant, who may have been negligent.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 84, 85; Dec. Dig. ☞80.]

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; William Campbell, Judge.

Action by Voorhies Foreman and wife against the Louisiana Western Railway Company. From a judgment for plaintiffs, defendant appeals. Reversed, and judgment ordered for defendant dismissing the suit.

Denegre, Leovy & Chaffe, of New Orleans, P. S. Pugh, of Crowley, and Jerome Mouton, of Lafayette, for appellant. Smith & Carmouche, of Crowley, for appellees.

SOMMERVILLE, J. Plaintiffs sue the defendant company for $25,000 damages for the loss of their daughter, a young girl under the age of 13 years, who was killed by the fast mail and passenger train of the defendant, on the 10th day of November, 1914, at a crossing in the village of Duson, in the parish of Lafayette.

They allege that the accident which caused the death of their daughter was due to the gross negligence, fault, and carelessness of the defendant company; that their daughter was passing over the public railroad crossing in the village of Duson, in a buggy, going at the usual rate of speed; and that she was not guilty of any fault or neglect.

They allege that the passenger train of the defendant company was going at an excessive rate of speed through the village, and that no warning of any kind was given by the moving train. They also allege that, on the opposite side of the crossing, a freight train of the defendant company was standing, and that the engine of that train gave a fierce blast just before the time of the accident, which attracted the attention of their daughter, and caused her to look towards that train, instead of in the opposite direction in which the fast train was moving. There was no evidence offered to show that any blast was emitted by the freight engine.

There was judgment in favor of plaintiffs and against defendant in the sum of $5,000, from which defendant has appealed.

Plaintiffs, in their brief, state their case to be:

"Our contention is that defendant, having done all these things, having placed the freight train to the west of the crossing, attracting the little girl's attention, and having put the box cars on the track where the view was already obstructed by the gin and other buildings, it

was the duty of the defendant company to exercise not only ordinary care and precaution; but as was said in the case of Ortolano et al. v. Morgan's La. & Tex. R. R. & S. S. Co., 109 La. 902, 33 South. 914, quoted in our original brief, 'it is the duty of the company to see that special precautionary steps be taken to guard against increased danger arising therefrom. This is particularly required and exacted when approaching crossings (either public or private), when there are reasons to believe that there may be persons in exposed positions at or near the track.'"

[1, 2] The village of Duson is located in a prairie country, and is 2¼ square miles in area. It has a population of 294. It is incorporated, and it is occupied mainly by farmers, as is the surrounding country. The land is flat and level. Its few trees are those of a low variety. A part of the village is divided into blocks, but these are sparsely settled; there being a population of 120 souls in that area. The balance of the village is cultivated in farms. There is but one crossing in the village. There are two other crossings about 1½ miles east and west. The locality is quite different from that referred to in the Ortolano Case, cited by plaintiff. 109 La. 902, 33 South. 914. There, a boy of five years of age was killed at a crossing near Harvey's Canal, in the parish of Jefferson; and the record disclosed that the crossings in question were crossed as many as 600 times a day, and that the train was running at an unnecessary rate of speed. Where, in the instant case, there is no evidence showing that the crossing in question was a much frequented one, or that those in charge of the fast train had reason to suppose that there would be an unusual number of persons in the vicinity of the crossing. The rate of speed was said to be 43 miles an hour. This was not excessive in view of the fact that the train was a through one; and travel ,was necessarily rapid. The train was not scheduled to stop at Duson. Duson was simply a flag station for some of the trains of the defendant company, but not for all of them. The evidence shows that the train

made the regular signals as it approached the crossing, and that plaintiffs' daughter failed to heed them; although they, as well as the noise of the train, were heard by other persons in the vicinity.

In the Ortolano Case, the court say:

"We repeat what was said in the Downing Case, 104 La. 508, 22 South. 207, that to run a train at a high rate of speed, and without precautionary signals, or with signals manifestly insufficient to meet the requirements of a proper warning of approach, where trainmen have reason to believe that there are persons in exposed positions on the track (as over unguarded crossings in a populous district of a city, or where the public are wont to cross on the track with such frequency and numbers as to be known to those in charge of a train), they will be held to a knowledge of the probable consequences of maintaining great speed without warning, so as to impute to them reckless indifference * * * thereto, and render their employers responsible for injuries therefrom, notwithstanding that there was negligence on the part of the injured, and no fault on the part of the servants after seeing the danger. The doctrine is not based on the idea that they should have sooner observed the danger, however, but on the ground that they knew of its existence, of the presence of people in positions of peril, as a matter of fact, without seeing them at all in the particular instance."

In the Ortolano Case, the court find that the engineer approached an unobstructed track and dangerous crossing at great speed, and without warnings; whereas, in the instant case, the train approached the crossing in question at the usual rate of speed, after proper and reiterated warnings. The defendant appears to be without fault in the premises.

Plaintiffs also refer to the case of Barnhill v. Texas & Pacific Railway Co., 109 La. 43, 33 South. 63, where an accident happened within the incorporated limits of Marthaville, in the parish of Natchitoches, which village contains about 250 people. The court found that the speed of a train in excess of 15 miles an hour under the circumstances was excessive. In that case, the crossing ,where the accident happened was found to be a much used crossing, and the track was much obstructed. The train was a freight train, and the engineer

failed to give the necessary signal. But, in that case, the court found that plaintiff had contributed to the accident by failing to stop, look, and listen. There was difficulty in Barnhill seeing the train as he approached the crossing; but the court held that the law enforced greater caution on him for that reason, and that a plaintiff who had contributed proximately to an injury cannot recover through the fault of another.

[3, 4] In the instant case, the plaintiffs' daughter had ample opportunity to see and hear the train before she reached the crossing, even conceding that a cotton gin alongside of the track partially obstructed her view as she neared the track. There were three tracks at the crossing—the main track and two side tracks. On one of these tracks was an empty freight car, which had been stopped at the gin for the purpose of being loaded. But she had driven from the railroad station, some distance from the scene of the accident, where she had left her younger sister to board the train for Lafayette. Before the arrival of that train, plaintiffs' daughter walked about 100 feet to reach her buggy. She then drove around three sides of a square before she reached the crossing. She might have looked and seen the approaching train while she was walking or driving, and she might have heard the train and its signals all of this time, had she listened. It was the duty of the young lady to have looked and listened when she was in the vicinity of this railroad crossing, and while she was walking and driving there; and, if she had done so, she would have seen and heard the approaching train, for the evidence is positive that the signals were blown by the engineer, and that the train was heard a great distance from the crossing. She, seeing that the cotton gin and box car, which latter was on the side track, might obstruct her vision as she got nearer the track, it was her duty to have been particularly careful in looking for the train as she approached the track.

Plaintiffs do not charge that the employés of the railroad saw the buggy driven by the deceased young lady, or by the exercise of such reasonable care as was consistent with their duty they might have seen her sooner than they did. There is no attempt to show that the defendant's employés failed in their duty from the moment the danger was seen up to the time of the accident, and there is no charge that the defendant was at fault with respect to any of the appliances on the train. The real contentions of plaintiffs are that the whistle was not sounded, the bell was not rung, the train was moving at a dangerously fast rate, and its speed was not slackened in approaching the crossing. It was shown that the signals were given, but they were evidently not heard by plaintiffs' daughter, because the young girl perhaps had her thoughts upon other things. There is no reason to suppose that the accident would have been avoided had the train been moving at a slower rate of speed than it was; it is not so charged. It is said to have been going dangerously fast, but it was not moving at a faster rate than passenger trains frequently move between stations. It is not shown that the crossing at Duson is a much frequented crossing. The cotton gin was closed, and did not attract people. There were very few witnesses to the accident, and there was no ground to suppose that persons proposing to cross there would not be governed by ordinary rules of caution and prudence. We are of the opinion that the deceased was guilty of such contributory negligence in this case as to cut off the claim for damages made by her parents.

Plaintiffs refer to the case of Mitchell v. Illinois Central R. Co., 110 La. 630, 34 South. 714, 98 Am. St. Rep. 472, where a boy between 12 and 13 years of age was killed at a crossing in Amite City. But there the crossing

was frequented by many people, a fact known to the engineer of the locomotive; and the accident was due to the running of a flying, or open, switch, which some of the authorities held to be negligence per se, and where the rule of the defendant forbade the making of a running switch where it was possible to avoid it, and when such switch was made great care must be had to prevent accidents. It was therein held:

"The dangerous experiment of making the running switch should have been avoided, there being a better and safer way—safer to the general public—and effecting the transfer of the two cars; (2) and because of the gross negligence of the brakeman, stationed at the crossing, in giving his attention to the making of a running switch rather than to those who came up to the crossing, and to give the warning he was sent there to give, the defendant was found at fault."

There is no analogy between the two cases.

The judgment appealed from is annulled, avoided, and reversed; and it is now ordered, adjudged, and decreed that there be judgment in favor of the defendant company, and against plaintiffs, dismissing their suit, with cost.