## WILLIAMS v. THOMPSON.
No. 422.

District Court, W. D. Louisiana,
Monroe Division.

Feb. 4, 1943.

A. B. Parker, of Jena, La., and J. B. Dawkins, of Monroe, La., for plaintiff.

Hudson, Potts, Bernstein & Snellings, of Monroe, La., for defendant.

PORTERIE, District Judge.

This is a civil action to recover damages in the amount of $17,250.00, brought by a young widow, but recently married, against the Bankruptcy Trustee of the railroad company, for the untimely death of her husband occasioned by the collision, at the Davenport Avenue crossing in the heart of Mer Rouge, Louisiana, between defendant's passenger train and an automobile driven by decedent, its sole occupant. The automobile was a borrowed car, and was being driven by decedent from Bastrop to Winnsboro, in Franklin parish, to take home his bride of a few weeks, who had gone there to see her mother. The partly-paved route taken through Mer Rouge was somewhat shorter than the all-paved route through Monroe. The accident occurred about nine-thirty p. m. on the night of January 5, 1940.

As made out in the pleadings, and presented upon the trial and urged in brief to the Court, without jury, the plaintiff's allegations of negligence, and forming her theory for recovery, are briefly:

A. That the grade crossing in question was "practically unnoticeable, improperly marked, without proper warning sign, as required by law"; and constituted a veritable "trap" for a motorist approaching it with no knowledge of its existence or location.

B. That because of the highway traffic involved and the location of the crossing in the heart of the Town, the railroad was legally obligated to install, maintain and operate at the crossing a mechanical warning system.

C. That the speed of the train was excessive; and that no warnings were sounded for its approach.

D. That, although pleaded, the defendant failed to show that plaintiff's decedent was guilty of any contributory negligence whatever having a proximately causal connection with the collision through which he met instant death.

E. That plaintiff having made out a prima facie case, defendant failed to absolve himself from liability thereunder.

On his behalf, the defendant pleaded that there was no actionable negligence on his part proximately causal of the collision; that the collision was due solely to the careless driving and the inattention of plaintiff's decedent; alternatively, in the event any actionable fault be attributed to the defendant, defendant pleaded that the contributory negligence of the driver of the automobile is a complete bar to recovery.

At the conclusion of plaintiff's evidence in chief, defendant filed, under Federal Rules of Civil Procedure, rule 41(b), 28 U.S.C.A. following section 723c, a motion for an involuntary dismissal, which the trial judge stated could legally be sustained, but which the Court temporarily overruled and held for subsequent consideration. The case then was completely tried and defendant's evidence and plaintiff's rebuttal

evidence were submitted. The full record is now before the Court and a decision upon the merits of the entire action would seem preferable to any reconsideration of the above motion.

### Findings of Fact.

1. The plaintiff herself affirmatively and conclusively established by all of her witnesses, except herself and decedent's friend L. E. Rawls, neither of whom had ever seen the crossing, that it was not a "blind" crossing; that from a point at least approximately eighty feet before reaching the crossing, the driver of an automobile approaching the crossing, as did the unfortunate decedent, had a clear, unobstructed view of the railroad track in front of him, and, also, to the north, the direction from which the train came; and that prudence would have required that such driver, who could, and therefore should, have looked and seen such approaching train, come to a stop before entering upon the track. It was proved that a car in good operating condition could have stopped easily in the distance and that it would have been in a position of safety when stopped.

Among plaintiff's witnesses who so testified in substance were the deputy coroner of Morehouse Parish, Dr. J. N. Jones; civil engineer J. G. Ford, Ouachita Parish surveyor; C. T. Matheny, a local resident; G. H. Scoggin, father of the decedent; Mr. Max Broadnax, assessor; W. S. Vosburg, night city marshal at Mer Rouge; and Henry Boykin and C. O. Golson, local merchants.

The maps and the photographs offered by both sides sustain, conclusively, this finding of fact.

2. The clear preponderance of the evidence conclusively establishes that the railroad train was blowing its whistle and ringing its bell; that it approached this crossing at a speed of about 40 miles per hour, and that it was slowing down for the regular station stop at the immediately nearby depot, situated just south of the crossing; and that in addition there was considerable rumble or running noise made by the train; that all of these physical facts could and should have been noted and heeded by the driver of an automobile approaching the crossing in ample time to enable him to stop in a position of safety.

3. The railroad "stop" sign is not placed in accordance with the requirements of Louisiana law. Because of the street intersections at the crossing, it is placed on the left, but in a well-selected position. It is physically impossible to place the sign in compliance with the statute. The stop sign could have been placed on the right side of the road at several locations, but all of these locations would have been impractical because the sign would have been either in the pavement itself or in the traveled portion of the street, or too close to the railroad track or too close to and hidden by the store building on the other side of the street. Moreover, the sign placed at any of those suggested positions would still be placed in violation of the law and not in accordance with the specifications fixed by the statute. Where placed, the sign was plainly visible, could be readily seen by anyone who was heeding his surroundings in approaching the crossing.

4. The record compels the court to conclude that plaintiff's decedent did not stop or slacken the speed of his automobile, nor did he look up the track to the north, where the approaching train was plainly visible, and did not hear the train when, from its bell and whistle and running noise, it could and should have been heard.

5. Plaintiff's decedent, the driver and sole occupant of the automobile, had been over this crossing many times and was, or should have been, thoroughly aware of its location.

6. The glass of decedent's automobile was not misted or beclouded. The only eyewitness (other than the enginemen), E. G. Black, who drove an auto following decedent, said that he realized decedent would be hurt because decedent never hesitated but proceeded seemingly oblivious of or inattentive to his surroundings.

7. There was no rain, fog, mist, smoke, dust or other obstruction to view; it was a clear but cold night.

8. The crossing and its environs were unusually well lighted, by street lights, depot lights, filling station lights, and electric signs. The railroad track itself was in plain view to one approaching it. Other evidences of its presence were the depot, immediately nearby, the cattle guard and the crossing boards over the track. The track and these other symbols, suggesting the nearness of a railroad track, were in plain sight to a casual observer.

9. Decedent's friend, Ted Jones, the owner of the automobile, testified (and he was not contradicted), that the automobile, an old "Model A" Ford, was unsafe to

drive, had bad brakes, was without automatic windshield wiper, and could only be stopped by reversing the gears. This witness recited further that the car made no unusual amount of noise while running.

10. The locomotive engineer testified, without contradiction, that he saw the auto approaching the crossing as soon as it came into open view, when it was about eighty feet from the track and his train was about two hundred feet north of the crossing; that his brakes were already in service application and almost instantly realizing the auto might not stop, he made full emergency application of his brakes, continuously ringing the bell and blowing the whistle; and that though the train made a very efficient stop, it was not possible to avoid the collision as the auto was driven onto the crossing immediately in front of the train.

## Conclusions of Law.

1. The decedent was guilty of active neglect proximately and immediately related to the ensuing collision, constituting negligence directly contributing to, if not solely the cause of, his untimely death.

Since such contributory negligence was affirmatively pleaded as a defense, and was clearly and preponderantly established by the evidence of both plaintiff and defendant, and since, under the law of Louisiana, such contributory negligence operates as a complete bar to any recovery by plaintiff, it follows that this action must be dismissed and plaintiff's demands rejected at her cost. Wyatt v. Yazoo & M. V. R. Co., 13 La.App. 632, 127 So. 479; Murray v. Yazoo & M. V. R. Co., La.App., 183 So. 543; Vernon v. Illinois Cent. R. Co., 154 La. 370, 97 So. 493; Perry v. Louisiana & A. R. Co., La.App., 142 So. 736; Louisiana & A. R. Co. v. Jackson, 5 Cir., 95 F.2d 369; Gates v. Arkansas & L. M. R. Co., La.App., 180 So. 835.

2. Nor in such a grade-crossing accident case may we accept plaintiff's theory as to the fact or legal effect of a "prima facie" showing of an accident, not only because no negligence on part of the defendant was factually established, but the accident, by itself, raises no presumption of negligence against the defendant. Illinois Cent. R. Co. v. O'Neill, 5 Cir., 177 F. 328, certiorari denied 217 U.S. 604, 30 S.Ct. 694, 54 L.Ed. 899; Washington v. Yazoo & M. V. R. Co., 11 La.App. 635, 124 So. 631.

3. There is involved here no element warranting an application of the doctrine of last clear chance as an exception to the contributory negligence bar.

4. The Court is not unmindful of the fact that the greater part of the testimony in this record had to do with the fact that the stop-law sign, required by Louisiana Act No. 12 of 1924, 5 Dart's Statutes § 8137, was not placed according to the specifications of that statute, in that it was on the north side instead of the south, the left side of the street instead of the right approaching from the west, was less than fifty feet from the nearest rail, and was not precisely at right angles to the street.

Defendant established the physical impossibility of literal compliance with the statutory specifications because of the location of the street pavements and buildings, and proved the actual location of the sign as the most efficient and practical under existing conditions.

If it be assumed, pro arguendo, as a matter of law, that the railroad is charged with negligence in the placement of the sign other than according to statutory requirement, such neglect constitutes but ordinary negligence, since, at most, the statute was not ignored and there was attempted good-faith compliance. Such ordinary negligence, under the law, does not preclude the effectiveness of the bar of contributory negligence. In fact, as a legal concept, some such fault on the part of defendant is an essential prerequisite thereto, for, otherwise, decedent's carelessness would not be contributory negligence at all, but the sole proximate cause, as urged by the defendant.

5. The train was slowing down from forty-five miles per hour for a station stop within a few hundred feet. We find no authority condemning that speed under such circumstances. This record contains little and only vague and general evidence as to any density of highway traffic at the time and place. In the case of Lewis v. Thompson, Trustee, D.C., 47 F.Supp. 435, 439, we said: " * * * Ordinarily a speed of 40 to 45 miles per hour, under normal conditions, is not negligent; and the traveler's inattention, not the train's speed, is the proximate cause of such accidents. 52 C.J. 202 et seq., 209 et seq., 242 et seq.; Washington v. Yazoo & M. V. R. Co., supra; Natal v. Louisiana & A. Ry. Co., 18 La.App. 50, 137 So. 600; Fore-

764

man v. Louisiana West. R. Co., 140 La. 389, 73 So. 242."

But suppose, for the purpose of argument, the train was running at an excessive speed, the gross and conclusively-shown contributory negligence of decedent remains an effective bar to recovery. See Slayter v. Texas & P. R. Co., La.App., 182 So. 343.

6. That adequate, proper and lawful warnings by whistle and bell were sounded was firmly established.

7. There is no physical condition here to constitute a "death trap" or bring this case under the so-called "death trap" doctrine, as established in the Louisiana jurisprudence following the decision ·in Draiss v. Payne, 158 La. 652, 104 So. 487.

No statutory, municipal or other law in Louisiana requires the maintenance of automatic mechanical crossing protection at street crossings in small country towns. There is no proof here of a sufficient density of traffic to warrant any such extraordinary precaution. As to the "range of vision" doctrine advanced by plaintiff, it obviously has no bearing upon the operation of railroad trains.

"In the absence of some extraordinary or unusual condition or circumstance, a railroad operating through trains on either regular or extra schedules, through small rural hamlets or villages, is not required, in the absence of statute or ordinance, to maintain gates or flagmen or automatic protection at street crossings or to reduce the usual and customary speed of its trains at these crossings; and, if proper, lawful and adequate warnings are sounded for such crossings, no negligence results, in the absence of proof of existing unusual or extraordinary conditions." Lewis v. Thompson, supra, 47 F.Supp. at page 438.

See La. Act 286 of 1938, § 3, Rule 17, Dart's La.Gen.Stats. § 5222(a); Winfiele v. Texas & P. R. Co., La.App., 150 So. 43; Eggleston v. Louisiana & A. R. Co., La. App., 192 So.. 774; Lockhart v. Missouri Pac. R. Co., La.App., 153 So. 577; Aaron v. Martin, La.App., 172 So. 840; Slayter v. Texas & P. R. Co., La.App., 182 So. 343.

The factual background of this case does not permit the use of the doctrine found in the case of Blackburn v. Louisiana Ry. & Nav. Co., 144 La. 520, 80 So. 708.

Accordingly, plaintiff's suit must be dismissed; such a judgment will be signed in due time.